IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JARED POPE,

    Plaintiff,

v.                                                                        Civ. No. 1:22-cv-00138 MIS/JHR

DUANE MARSHALL and
MOUNTAIN VIEW FAMILY DENTISTS, LLC,

    Defendants.

## **ORDER**

THIS MATTER is before the Court on Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Application"). ECF No. 2. The Court has considered the written submissions (including affidavits) from the Plaintiff, the arguments presented at the March 2, 2022 hearing, and the applicable law. The Court will deny the Application.[1]

## **PROCEDURAL BACKGROUND**

On February 24, 2022, Plaintiff filed his Complaint, on the basis of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count I); common-law breach of contract (LLC member agreement) (Count II); common-law breach of contract (independent contractor agreement) (Count III); common-law unjust enrichment (Count IV); and the New Mexico Uniform Voidable Transactions Act, N.M. Stat.

---

[1] This Order is made without prejudice for Plaintiff to file an application for preliminary injunction or motion for leave to file an amended complaint in the future.

Ann. 56-10-18 (2021) (Count V). ECF No. 1 at 6–10. On the same day, Plaintiff filed the present Application. ECF No. 2.

In the Application, Plaintiff asks that the Court "enter a temporary restraining order (a) prohibiting Defendants or their agents or employees from diverting income from the [LLC] to the Marshall LLC and (b) prohibiting Defendants or their agents or employees from transferring, withdrawing, conveying, loaning, selling, or otherwise disposing of any funds that were derived from the [LLC] and that were not originally deposited in the [LLC's] business account." ECF No. 2 at 10. The Court held a hearing on March 2, 2022, at 2:00 p.m. As of the date and time of the Court's hearing on the Application, there was no indication that any Defendant had been served with a summons or the Complaint, and there was no indication that any Defendant had prior written or oral notice of the Application or hearing.[2]

**FACTUAL BACKGROUND**

The following facts are taken from the affidavits submitted with the Application and are presently being considered solely for purposes of the Application, pursuant to Federal Rule of Civil Procedure 65(b)(1)(A):

Plaintiff, Jared Pope, DDS, currently owns several dental practices in Arizona and New Mexico. Doc. 2-1 at 1. In late 2019, he arranged to purchase a dental practice located in Rio Rancho, New Mexico, through a company called Mountain View Family Dentistry & Orthodontics, LLC (the "LLC," "Pope LLC," or "Company"). *Id.* at 2. Plaintiff owns a

---

[2] The Court notes that, pursuant to Federal Rule of Civil Procedure 65(b)(1)(B), Plaintiff's attorney has certified in writing that he made no effort to contact Defendants to provide notice of the Application, due to the "likelihood that Defendants would conceal or dissipate assets that have been fraudulently diverted from the Company before the Application could be ruled upon." *See* ECF No. 2 at 11.

50-percent interest in the LLC, along with Defendant Dr. Duane Marshall ("Defendant Marshall"), who owns the remaining 50-percent interest. *Id.* Only Plaintiff is a manager of the LLC; Defendant Marshall is not a manager. *Id.*

The LLC's affairs are governed by a Member Agreement dated December 6, 2019. *Id.* The Member Agreement was executed by Jared Pope individually and Duane Marshall individually. *Id.* The Member Agreement requires all income of the LLC to be deposited directly into the Company's business account. *Id.*

Defendant Marshall also executed an Independent Contractor Agreement with the LLC. ECF No. 2-1 at 2. The Independent Contractor Agreement was executed by (1) Duane Marshall, DMD; (2) Western Hills Dental LLC (signed by Duane Marshal, DMD, in his capacity as Manager); and (3) Mountain View Family Dentistry & Orthodontics, LLC (signed by Jared Pope, in his capacity as Manager). ECF No. 2-1 at 40. (Of the three, only Defendant Marshall is a party to the present lawsuit.) Section 33 of the Independent Contractor Agreement provides, "Defendant Marshall . . . will not solicit, divert, or attempt to divert or take away any patients of the Practice . . . for a period beginning the Effective Date until two years from the date [Defendant Marshall] discontinues practicing dentistry on the Premises under the terms of the [Independent Contractor Agreement]."

From January 2021 through September 2021, the LLC generated an average of $134,956 per month in gross revenue. *Id.* Beginning in October 2021, the Company's bank deposits began to drop significantly: $45,626 was deposited in October, followed by $97,414 in November, $65,523 in December, and $62,538 in January 2022. *Id.* Plaintiff spoke to Defendant Marshall multiple times, beginning in October 2021, in an attempt to ascertain the reason for the drop in revenue. *Id.* Defendant Marshall offered a series of

excuses, including telling Plaintiff that "patients didn't want to schedule new appointments due to the pandemic, that patients didn't want to commence new treatment, and that he couldn't provide as much treatment as he'd like because his assistant was not doing a good job." *Id.* at 2–3. Plaintiff did not believe Defendant Marshall's excuses, particularly because none of Plaintiff's other practices experienced a similar decline in revenue during the same time period.

On November 10, 2021, Plaintiff visited the LLC's practice location, along with two members of his management team. *Id.* at 3. They spent the entire day in the office, reviewing documentation and speaking to staff members in an attempt to figure out what was happening. *Id.* Defendant Marshall again provided several excuses as to why the LLC was not generating as much revenue as before. *Id.* During the visit, Plaintiff noticed that the LogMeIn Remote Access software, which he used to monitor the practice remotely, had been uninstalled from the desktop computers in the office. *Id.* Plaintiff had his staff reinstall the software on the computers. *Id.* The next day, the software had been deleted again. *Id.* Plaintiff asked Defendant Marshall why the software had been deleted and reminded Defendant Marshall that "no one was authorized to remove this software and that it was needed for [Plaintiff and his team] to do [their] job as management." *Id.* Defendant Marshall stated that a staff member had deleted the software. *Id.* When problems with the remote access software persisted, Plaintiff became suspicious that Defendant Marshall or the staff were deleting the software in an attempt to prevent Plaintiff from discovering evidence that Defendant Marshall or the staff were diverting income from the LLC. *Id.*

In February 2022, Plaintiff conducted a search of the New Mexico Secretary of State's business registry. *Id.* Plaintiff then learned that Defendant Marshall had formed a single-member LLC, called Mountain View Family Dentists, LLC (the "Marshall LLC"), on August 22, 2021. *Id.* (Plaintiff states that this was done "right before the precipitous drop in the [LLC's] income." *Id.*) Defendant Marshall is listed as the organizer, manager, and sole member of the Marshall LLC. *Id.* The Marshall LLC's principal place of business is listed as the same address where the Pope LLC's practice is based. *Id.* Defendant Marshall created two other entities (Endeavor Management, LLC and Endeavor Dental Management, LLC) without Plaintiff's knowledge and while subject to the non-compete provision of the Independent Contractor Agreement. *Id.*

Plaintiff hired a private investigator to investigate what was happening at the practice. *Id.* The investigator scheduled an appointment at the practice for February 9, 2022. *Id.* The investigator wrote a check for $2,579.12 as a deposit for orthodontic work. *Id.* The check cleared on or about February 12, 2022, but it did not deposit into the LLC's account. *Id.* A separate check for $11.23 that the investigator wrote to cover her teeth cleaning *was* deposited into the LLC's account, however. *Id.* While she was at the practice, the investigator noticed that there were laptops and a tablet in the reception area at the practice. *Id.* Plaintiff does not have access to these devices, which were purchased without Plaintiff's knowledge or consent. *Id.* The investigator also noted several other discrepancies in her investigative report, which indicated to her that Defendant Marshall and the Pope LLC's employees were doing business under the Marshall LLC, and that these persons were working in active concert to divert income from the Pope LLC to the Marshall LLC. *See* ECF No. 2-2 at 1–14.

## DISCUSSION

I.    **Standard for Granting a Temporary Restraining Order**

"The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A party seeking preliminary injunctive relief must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 Fed. App'x 396, 402 (10th Cir. 2018) (unpublished). The factors for issuance of a temporary restraining order are essentially the same as those for a preliminary injunction; however, the Court's findings on an application for temporary restraining order do not represent an adjudication on the merits. *See* 11A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d ed. 2021). Thus, they are not binding on the parties in a later action for permanent injunction. *See id.* The issuance of preliminary injunctive relief is within the sound discretion of the district court. *See Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 354 (10th Cir. 1986).

## II.     Analysis

Because the Court finds that two of the factors (likelihood of success on the merits and threat of irreparable harm) are dispositive, the Court will address these factors first.[3]

### A. Likelihood of Success on the Merits

#### i.    Count I: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

There is not a substantial likelihood of success on the merits of Plaintiff's claims pursuant to the CFAA. Specifically, the relevant provision of the CFAA cited in Plaintiff's Complaint (ECF No. 1 at 6–8) and Application (ECF No. 2 at 8) provides criminal and/or civil penalties against someone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value [exceeding $5,000 in any 1-year period]." 18 U.S.C. § 1030(a)(4). Plaintiff argues that, although Defendant and office staff generally had access to office computers, they "exceed[ed] authorized access" by accessing files, folders or databases, in order to delete LogMeIn Remote Access software, thus preventing Plaintiff from monitoring their unlawful activities (i.e., Defendant Marshall's diversion of income from the LLC). *See* ECF No. 2-1 at 3.

As a threshold matter, Plaintiff's allegations (i.e., that Defendant Marshall and office staff "accessed the company's computers in a manner that exceeded their authorized access in furtherance of their scheme to defraud the [LLC]" (ECF No. 2 at 8)), even if true, would fail to meet the standard set forth in *Van Buren v. United States*, 141 S. Ct. 1648 (2021). In *Van Buren*, the United States Supreme Court held that "an

---

[3] *See Nken v. Holder,* 556 U.S. 418, 434 (2009) (noting the first two factors, likelihood of success and irreparable harm, are the "most critical" to a stay of immigration removal proceedings; further noting that the standards for issuance of a stay are similar to those for granting preliminary injunctive relief).

7

individual 'exceeds authorized access' [under the CFAA] when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 1662. In the present case, Plaintiff does not allege that Defendant Marshall obtained information from any "files, folders, or databases" that were off limits to him. Rather, Plaintiff alleges that Defendant Marshall or his agents deleted LogMeIn Remote Access (a prohibited activity under company policy) in order to limit Plaintiff's supervision of Defendant Marshall's access to files, folders, or databases (e.g., financial software, patient files, etc.) that were already available to Defendant Marshall. Plaintiff claims that Defendant Marshall and his agents "intentionally accessed the company's computers in a manner that exceeded their authorized access" (ECF No. 2 at 8), but Plaintiff's sworn affidavit stated that Defendant Marshall and his agents used their already-authorized access for an improper purpose (i.e., to commit wrongdoing and to block Plaintiff from seeing the wrongdoing). Under *Van Buren*, this allegation would be insufficient to state a federal claim under the CFAA, given that even taking Plaintiff's allegations as true, Defendant Marshall would have been "authorized" to access all of the information he allegedly used to perpetuate wrongdoing against the Company, even though his use of such information was obviously for an improper purpose. Therefore, Plaintiff does not have a likelihood of success on the merits of Count I of the Complaint.

      ii.   <u>Count II: Breach of Member Agreement</u>

Although the Court finds that Plaintiff has set forth credible information to show that Defendant Marshall breached the Member Agreement, this information does not allow for a TRO. Even if all the factors for TRO were met, the Court would be unable to

grant injunctive relief on this claim, which is essentially a legal claim for money damages. In *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, the United States Supreme Court held that a district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." 527 U.S. 308, 333 (1999). There is no evidence regarding how his breach of contract claim entitles Plaintiff to equitable relief under the Court's general equitable powers, or that any other applicable legal doctrines apply. Therefore, the Court cannot grant a TRO based on Count II.

### iii.   Count III: Breach of Independent Contractor Agreement

Plaintiff has asserted claims for breach of the Independent Contractor Agreement. Although Plaintiff has set forth facts showing that Defendant Marshall has breached the Independent Contractor Agreement, and although the Independent Contractor Agreement explicitly provides for injunctive relief (*see* ECF No. 2-1 at 37), it has not been established that Plaintiff has a *personal* entitlement to injunctive relief due to Defendant's breach, given that Plaintiff is not a party to the Independent Contractor Agreement.[4] The parties to the Independent Contractor Agreement are as follows: (1) Duane Marshall, DMD; (2) Western Hills Dental LLC (signed by Duane Marshal, DMD, in his capacity as Manager); and (3) Mountain View Family Dentistry & Orthodontics LLC (signed by Jared Pope, in his capacity as Manager). ECF No. 2-1 at 40. Plaintiff, Jared Pope individually, is not a party to the Independent Contractor Agreement, and his only involvement in the Agreement was that he signed in his capacity as Manager of the LLC.

---

[4] Because the Independent Contractor Agreement allows for injunctive relief as a *contractual* remedy, the doctrine in *Grupo Mexicano*, 527 U.S. at 333, likely would not bar his claims. Unfortunately, Plaintiff (Dr. Pope individually) is not a party to the Independent Contractor Agreement.

*Id.* It is not clear why the LLC is not a party to the lawsuit, but the Court has concerns about Plaintiff's ability to sue on his own behalf, for matters involving a member's liability to the LLC. *See, e.g.*, N.M. Stat. Ann. § 53-19-14 (2021) ("A member of a limited liability company is not a proper party to a proceeding by or against the limited liability company solely by reason of being a member of the limited liability company, except where the object of the proceeding is to enforce a member's right against or liability to the limited liability company."); *Alto Eldorado Partners v. City of Santa Fe*, Civ. No. 08-0175 JB/ACT, 2009 WL 1312856, at *18 (D.N.M. Mar. 11, 2019) ("A member has no interest in an item of limited liability company property.") (quoting N.M. Stat. Ann. 53-19-29(A) (2009)).

To further complicate matters, even if the LLC were a party to the lawsuit against Defendant Marshall, and assuming no federal question existed under the CFAA, the Court likely would lack diversity jurisdiction, given that an "LLC, as an unincorporated association, takes the citizenship of all its members." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). The Court conceives that Plaintiff would then be required to sue in a state court, where he may be entitled to similar (or perhaps greater) remedies.[5] At any rate, the Court finds that the burden has not been met with regard to Count III of the Complaint.[6]

---

[5] Such remedies could include remedies for the alleged conversion of Plaintiff's property, attachment proceedings under state law, or other relief. Of course, the Court makes no determination as to what relief would be available to Plaintiff or any other party in state court.

[6] Even assuming that Plaintiff has somehow demonstrated likelihood of success on the merits, he has failed to establish irreparable harm, and therefore his Application must fail. *See* Section B below.

### iv.  Count IV: Unjust Enrichment

To prevail on an unjust enrichment claim, Plaintiff must show that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *See Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. 2000) (citing Restatement of the Law of Restitution §§ 1, 40, 41 (Am. Law Inst. 1937, as supplemented through 1988)). "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros*, 3 P.3d at 203–04. New Mexico law strongly disfavors unjust enrichment claims when an adequate remedy exists under contract law. *See Sims v. Sims*, 930 P.2d 153, 159 (N.M. 1996) (equity will not act if there is a complete and adequate remedy at law) (citing *S.P.C.S., Inc. v. Lockheed Shipbuilding and Constr. Co.*, 631 P.2d 999, 1001 (Wash. Ct. App. 1981)).

There is not a likelihood of success on the merits of Plaintiff's claims for unjust enrichment. In the Application, Plaintiff's argument regarding unjust enrichment is that "the Marshall LLC has received funds that have been fraudulently diverted from the Company." ECF No. 2 at 8. While Plaintiff has preliminarily shown that Defendant Marshall or a third-party LLC controlled by Defendant Marshall is in possession of some assets belonging to Mountain View Family Dentistry & Orthodontics LLC, he has not demonstrated that there is anything preventing Plaintiff (or a real party in interest) from pursuing the contract claims against Defendant Marshall. *See, e.g., Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1276 (D.N.M. 2014) ("[T]he Court believes that New Mexico courts would . . . disfavor an unjust enrichment claim against a third party when that claim involves the same subject as a contract, unless there is something

11

preventing the plaintiffs from pursuing the contract claims."). Further, the Court determines the argument regarding the likelihood of success on the merits of any unjust enrichment claims was undeveloped, and therefore the Court need not consider it. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."). In at least two separate ways (i.e., on the merits and undeveloped argument), there is no demonstration of a likelihood of success on the merits of Count IV of the Complaint.

v. Count V: Uniform Voidable Transactions Act

Similar to Section (iv) above, there is not a likelihood of success on the merits of Plaintiff's claims brought pursuant to the Uniform Voidable Transactions Act. In the Application, Plaintiff's argument regarding the UVTA is that "the Marshall LLC has received funds that have been fraudulently diverted from the Company." The essential elements of the UVTA claim or how Plaintiff's facts fit within these elements is undeveloped, and therefore the Court will not consider it. *See id.* There is no demonstration of a likelihood of success on the merits of Count V of the Complaint.

**B. Threat of Irreparable Harm**

Even if Plaintiff demonstrated the likelihood of success on any of his claims, he nevertheless not shown irreparable harm. "Irreparable harm" means that the injury must be both certain and great, not merely serious or substantial. *Band of Potowatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Irreparable harm is often suffered when the injury cannot be adequately atoned for in money or when the district court cannot remedy the injury following a final determination on the merits. *Id.*

Although the issue of irreparable harm is a somewhat closer call than the likelihood of success on the merits (given the facts presented by Plaintiff showing the egregious nature of Defendant Marshall's actions), the Court determines that there has been no establishment of irreparable harm. Plaintiff alleges that the Marshall LLC may be in possession of funds belonging to the Pope LLC. However, it appears likely that the Marshall LLC is under the direct control of Defendant Marshall, against whom a money judgment is already sought. Further, there has been no showing of how an award of damages against Defendant Marshall would be an inadequate remedy, particularly given that (as already stated) the Marshall LLC appears to be under his direct ownership and control.

Plaintiff has not shown that Defendant Marshall has diverted long-term customers or clients away from the business, such that their goodwill has been taken away; instead, it appears that customers are not even aware of what is happening, and they continue to believe that they are patronizing the same business as before. Therefore, aside from money being diverted from the LLC, Plaintiff has not shown that Defendant Marshall has committed acts that would irreparably harm the company if injunctive relief did not issue. This appears to be purely an issue of Defendants (either one of them) being liable to the LLC and/or Plaintiff for money damages. The facts of the present case differ from similar cases finding irreparable harm from a company insider, given that in the present case, the evidence shows that Defendant Marshall is diverting funds into accounts within his control, not that he has permanently or irreparably taken away customer goodwill or

intellectual property belonging to the business.[7] *Compare* the present case *with Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F. Supp. 2d 1102, 1108 (D. Kan. 2000) (finding irreparable harm due to "extreme difficulty and uncertainty in restoring goodwill among customers and regaining the business of customers"); *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (holding that irreparable harm can be inferred from insurance sales representatives' breach of non-competition covenant).

### C. Other Factors

Regarding the remaining two factors (balance of hardships and public interest), these two factors alone would be insufficient to grant a TRO. Given the Plaintiff's failure to establish the other factors for a TRO (i.e., likelihood of success on the merits of the present Complaint and irreparable harm), the Court could not proceed to grant the TRO, even if the balance of hardships and public interest weighed in Plaintiff's favor. Therefore, the Court declines to determine these issues at this time.

### CONCLUSION

For the foregoing reasons, Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, filed February 24, 2022, ECF No. 2, is hereby **DENIED**.[8]

---

[7] At the TRO hearing, Plaintiff's counsel noted the risk that Defendant Marshall could potentially divert funds overseas or into "bitcoin." At this time, Plaintiff has presented insufficient information to suggest that this has occurred or is likely to occur in the future.

[8] The Court makes no final determination on the merits of Plaintiff's claims or on any future application for preliminary injunction, and Plaintiff is not prejudiced from filing an amended complaint or application for preliminary injunction by this Order.

**IT IS SO ORDERED.**

*Margaret Strickland*

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE