IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JARED POPE, DDS, individually and
derivatively on behalf of Mountain View
Family Dentistry and Orthodontics, LLC,
PROVERUS MANAGEMENT, LLC, and
JARED POPE, DDS, PLC,

      Plaintiffs,

v.                                                        CV 22-0138 MIS/JHR

DUANE MARSHALL, DMD, MOUNTAIN
VIEW FAMILY DENTISTS, LLC,
MOUNTAIN VISTA FAMILY DENTISTRY
AND ORTHODONTICS, LLC, and MOUNTAIN
VIEW FAMILY DENTISTRY AND
ORTHODONTICS, LLC

      Defendants,

**MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION AND GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Plaintiffs' Objections [Doc. 33] to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PF&RD") [Doc. 31]. The Magistrate Judge recommended granting Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim and lack of subject matter jurisdiction and recommended Plaintiffs be granted leave to amend their Complaint. [Doc. 31] at 11. Having conducted a de novo review of the portions of the PF&RD to which Plaintiffs properly objected, this Court overrules Plaintiffs' Objections and adopts the PF&RD in part. Plaintiffs fail to state a federal question claim, and cannot establish diversity jurisdiction over their remaining state claims with all proper parties joined to the action. The Court will therefore dismiss the case.

## BACKGROUND

The allegations against Defendants arise from a "partnership gone wrong." [Doc. 31] at 2. In 2019, Dr. Jared Pope ("Dr. Pope") and Dr. Duane Marshall ("Dr. Marshall") formed a limited liability company called Mountain View Family Dentistry and Orthodontics, LLC, named here as both a plaintiff[1] and as a "nominal defendant" (hereinafter "the Company"). [Doc. 8] at 2. Dr. Pope is a resident of Arizona who agreed to provide support services to the Company while Dr. Marshall, who lived and operated a dental practice in New Mexico, would be its practicing dentist and run its daily affairs. *Id.* at 3. Dr. Pope is the sole managing member of the Company, but Dr. Marshall holds an equal share of equity. *Id.* at 2. In furtherance of the parties' business plan, Dr. Pope had the Pope PLC loan $795,000 to the Company so that it could purchase "the Practice." *Id.*

Business proceeded as planned from January 2021 through September 2021 with the Company generating an average of $134,956 per month in gross revenue. *Id.* at 3. From that point forward the Company's revenue dropped by almost half and continues to decline. *Id.*; *see generally* [Doc. 27]. Dr. Marshall offered explanations that did not satisfy Dr. Pope, who investigated and learned that Dr. Marshall directly or through employees uninstalled or manipulated remote access and monitoring software that Dr. Pope installed on company computers. [Doc. 8] at 4; [Doc. 27] at 6, 13. For example, Dr. Pope says the former office manager of the Company told him that Dr. Marshall uses a separate cloud-based billing and practice management software to siphon funds from the Company while falsely representing actual patient revenue to the Company. [Doc. 27] at 5-6; [Doc. 29] at 6-7.

---

[1] Insofar as Dr. Pope asserts the Company's claims derivatively as styled in the First Amended Complaint. [Doc. 8].

Dr. Pope filed the original Complaint and first Motion for Temporary Restraining Order against Dr. Marshall and Mountain View Family Dentists, LLC[2] on February 24, 2022. [Docs. 1, 2]. This Court denied the Motion for Temporary Restraining Order upon finding that Plaintiffs were unlikely to succeed on the merits of the federal Computer Fraud and Abuse Act claim (the "computer fraud" claim), the unjust enrichment claim, and the state law Uniform Voidable Transactions Act claim (the "voidable transactions" claim). [Doc. 7]. The Court further expressed concerns that diversity jurisdiction may be lacking with the Company properly named as a party to the lawsuit. *Id.* at 9-10.

Shortly thereafter, the First Amended Complaint (the "amended complaint") was filed by Plaintiffs Dr. Pope, individually and derivatively on behalf of the Company, Proverus Management, LLC, and Jared Pope D.D.S., P.L.C., against Defendants Dr. Marshall, Mountain View Family Dentists, LLC, and Mountain Vista Family Dentistry and Orthodontics, LLC. [Doc. 8]. Plaintiffs additionally named the Company as a "nominal defendant." *Id.* The amended complaint raises several state-law claims under diversity jurisdiction: breach of contract (*i.e.*, the member agreement), equitable lien, unjust enrichment, breach of duty of loyalty, and a voidable transactions claim. *Id.* at 11-16. The amended complaint also includes the federal computer fraud claim. *Id.* Defendants filed a Motion to Dismiss on March 22, 2022 arguing lack of subject matter jurisdiction and failure to state a claim. [Doc. 17].

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3), the Court referred the case to United States Magistrate Judge Jerry H. Ritter for analysis and recommended disposition. [Doc. 22]. Judge Ritter issued the PF&RD on July 12, 2022, and recommended that the

---

[2] Mountain View Family Dentists, LLC is described as Dr. Marshall's own single-member LLC through which Dr. Marshall allegedly diverted Company funds. *See* [Doc. 8] at 4-7.

3

Court grant Defendants' Motion to Dismiss [Doc. 17], deny Plaintiffs' Renewed Motion for Temporary Restraining Order [Doc. 27], and deny Plaintiffs' Motion for Expedited Discovery [Doc. 9]. Plaintiffs' Objections [Doc. 33], Defendants' Response [Doc. 43], and Plaintiffs' Reply [Doc. 35] followed. Upon conducting a *de novo* review, the Court finds Plaintiffs' Objections to be without merit and largely adopts Judge Ritter's recommendations.

## The PF&RD

The Court will summarize the PF&RD in relevant part. The PF&RD addressed key jurisdictional questions and found that neither federal question nor diversity jurisdiction existed. [Doc. 31] at 8, 9. Judge Ritter determined that federal question jurisdiction did not exist because, assuming the allegations in the complaint to be true, Defendants did not violate the Computer Fraud and Abuse Act when Defendants accessed information that was "otherwise available" to Dr. Marshall, an equal partner in the LLC, even if Dr. Marshall accessed or altered the information for an improper purpose. *See Van Buren v. United States*, 141 S. Ct. 1648 (2021). Judge Ritter concluded that diversity jurisdiction did not exist because (1) "Dr. Pope may not litigate violations of state law on behalf of the [Company], rendering it a proper plaintiff as a separate entity," [Doc. 31 at 9], and (2) the requirement of complete diversity cannot be met where both the Company as a plaintiff and Dr. Marshall as a defendant are citizens of New Mexico. *Id.*

The PF&RD also recommended that Plaintiffs' Motion for Expedited Discovery [Doc. 9] and Renewed Motion for Temporary Restraining Order ("TRO") [Doc. 27] be denied. *See id.* at 9-10. Judge Ritter found that Plaintiffs' allegation of Defendants diverting the Company's income did not materially alter the Court's previous TRO

4

analysis. *Id.* at 9. In denying the first TRO, this Court found that "the availability of a remedy at law for money damages means that the feared harm is not irreparable." *Id.* at 9 (citing [Doc. 7] at 12-13). Judge Ritter recommended that the Court deny the Motion for Expedited Discovery on Defendants' assets as premature because Plaintiffs have not established federal subject matter jurisdiction. *Id.* at 10. Finally, Judge Ritter recommended that Plaintiffs should be allowed to amend their Complaint again. *Id.*

## LEGAL STANDARDS

The Court referred the matter to Judge Ritter pursuant to 28 U.S.C. § 636(b)(1)(B). [Doc. 22]. Under that referral provision, the Court's standard of review of a magistrate judge's PF&RD is *de novo. See* 28 U.S.C. § 636(b)(1)(C). When resolving objections to a magistrate judge's PF&RD, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Moreover, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.")

In adopting a PF&RD, the district court need not "make any specific findings; the district court must merely conduct a de novo review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing *In re Griego*, 64 F.3d at 583–84). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 724 (10th Cir. 1993); *see also Garcia*, 232 F.3d at 766. (A "terse" order containing one sentence for each of the party's "substantive claims," which did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion," was sufficient.), The Supreme Court has explained that "in providing for a de novo determination rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (quoting 28 U.S.C. § 636(b)) (citing *Mathews v. Weber*, 423 U.S. 261, 275 (1976)).

## ANALYSIS

Limited jurisdiction is the rule in federal courts, not the exception. *See Hunt v. Jack V. Waters, D.C., P.C.*, 403 F. Supp. 3d 1036, 1055 (D.N.M. 2019). The party seeking to establish subject matter jurisdiction bears the burden of proving all jurisdictional facts to show that federal court jurisdiction is proper. *See id.* (internal citation and quotation omitted). Any ambiguity in subject matter jurisdiction should be resolved in favor of

6

remand. *Id.* Rule 12(h)(3) plainly requires the court to dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

### I. **Plaintiffs have not stated a claim under the Computer Fraud and Abuse Act.**

Plaintiffs object to the recommendation to dismiss their computer fraud cause of action for failure to state a claim. [Doc. 33] at 15-17. Plaintiffs contend that the claim arose from Dr. Marshall violating "a computer access policy prohibiting anyone at the Practice, including Dr. Marshall, from blocking, removing, uninstalling, or altering the LogMeIn software." *Id.* at 10. LogMeIn allows Dr. Pope to remotely monitor the Practice's activities. *Id.* Dr. Marshall allegedly "violated this policy by repeatedly uninstalling this software, even after being specifically informed that this conduct violated the Company's computer access policy." *Id.* at 11. Plaintiffs propose that "allegations that a defendant accessed a particular file in violation of a contract or policy prohibiting the defendant from accessing that file will support a CFAA claim." *Id.* at 16-17 (citing *Van Buren*, 141 S. Ct. at 1659, n.8 and *Vox Mktg Grp v. Prodigy Promos*, 556. F. Supp. 3d 1280, n.2 (D. Utah 2021)). Notably, the amended complaint alleges that Dr. Marshall violated the Computer Fraud and Abuse Act by *exceeding his authorized access* to a computer and altering information therein. [Doc. 8] at 9, 10. After reviewing the record de novo, the Court agrees with Judge Ritter and finds that Plaintiffs' facts fail to state a claim under the Computer Fraud and Abuse Act. The Court will briefly review the *Van Buren* case.

### The Computer Fraud and Abuse Act as interpreted by *United States v. Van Buren*

The Computer Fraud and Abuse Act is primarily a criminal statute which also provides a civil cause of action when an individual accesses a computer either "without

7

authorized access" or "exceeds authorized access" and obtains or alters information therefrom. 18 U.S.C. §1030(a)(2)(c), (a)(4). Plaintiffs plead the "exceeds authorized access" prong, which the Supreme Court addressed in *Van Buren*. *See* [Doc. 8] at 9, 10; *see also ACI Payments, Inc. v. Conservice, LLC*, No. 21-cv-00084, RJS-CMR, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). The statute defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain." § 1030(e)(6); *see also Van Buren*, 141 S. Ct. at 1653. "Not entitled so to obtain" refers to "information one is not allowed to obtain by using a computer that he is authorized to access." *Id.* "Access" refers to "the act of entering a computer system itself or a particular part of a computer system such as files, folders, and databases." *Id.* at 1656. Thus, "exceeding authorized access" is "the act of entering a part of the system to which a computer user lacks access privileges," for example, hacking into the password-protected section of an otherwise accessible system. *Id.* *Van Buren* describes this prong as "a gates up or down inquiry . . . one either can or cannot access certain areas within the [computer] system." *Id.*

    *Van Buren* did not decide whether this "gates up or down" access inquiry turns on technological restrictions (such as passwords or codes) "or instead looks to limits contained in contracts or policies." *Id.* at 1659, n.8. Regardless, the "exceeds authorized access prong" is not intended to "criminalize every violation of a computer-use policy," which would turn "millions of otherwise law-abiding citizens" into criminals. *Id.* at 1661. Nor does it impose liability based on the purpose, manner or circumstance for which the

information was obtained or altered.[3] *See id.* at 1654-55; *see* [Doc. 31] at 8, 9. There is little Tenth Circuit guidance on the Computer Fraud and Abuse Act post-*Van Buren.* Plaintiffs' (largely persuasive) authority addresses the "without authorization" prong, which is not at issue here.[4] *See* [Doc. 33] at 16, 17.

<u>Allegations that Dr. Marshall violated a computer policy do not state computer fraud liability.</u>

The Court does not agree that a policy or contract-based violation, which Plaintiffs allege against Dr. Marshall, supports a computer fraud claim under the "exceeds authorized access" prong for someone who is otherwise authorized to access a given computer system. Plaintiffs assert that "allegations that a defendant accessed a particular file in violation of a contract or policy prohibiting the defendant from accessing that file will support a CFAA claim." *Id.* at 16-17. However, *Van Buren* did not go so far, stating: "[f]or present purposes, *we need not address whether this [exceeds authorized access] inquiry turns only on technological (or code-based) limitations on access, or instead also looks to limits contained in contracts or policies.*" *Van Buren*, 141 S. Ct. 1648, n.8 (emphasis added). Plaintiffs contend that "*Van Buren* explicitly left open the possibility that a defendant could be liable under the CFAA for violating contractual provisions related to computer access." [Doc. 33] at 17 (citing *Vox Mktg Grp*, 556. F. Supp. 3d at 1280, n.2). However, as explained by the *Vox Marketing* court,

> The [*Van Buren*] *Court did reject the proposition that an individual who is authorized to access information for certain purposes "exceeds authorized*

---

[3] *E.g.*, *Van Buren* specifically rejected the situation where "an employee might lawfully pull information from Folder Y in the morning for a permissible purpose . . . but unlawfully pull the same information from Folder Y in the afternoon for a prohibited purpose." *Id.* 1655.

[4] Plaintiffs cite the following inapposite cases: *United States v. Thompson*, 2022 WL 834026, at *3 (W.D. Wash. Mar. 21, 2022); *ACI Payments*, 2022 WL 622214, *1; *Gemstone Foods, LLC v. AAA. Foods Enterprises, Inc.*, No. 5:15-CV-01179-MHH, 2022 WL 586767, at *1 (N.D. Ala. Feb. 26, 2022); *Vox Mktg Grp* v. *Prodigy Promos*, 556. F. Supp. 3d 1280, 1282 (D. Utah 2021); *see* [Doc. 33] at 16-18.

> *access" when he violates contractual terms barring the use of information for other purposes.* But, as noted, the [*Van Buren*] Court explicitly left open the possibility that an individual could obtain access to information without authorization by violating contractual provisions barring *any* access at all to that information.

*Vox Mktg Grp,* 556. F. Supp. 3d 1280, n.2 (emphasis added).

Plaintiffs allege Dr. Marshall violated a computer access policy "by making changes to a 'particular areas in the computer . . . *to which his access did not extend*.'" [Doc. 33] at 16 (emphasis added); *see* [Doc. 8] at 10. As stated above, *Van Buren* and *Vox Marketing* do not welcome sanctioning policy or contract violations under the "exceeds authorized access" prong for users who are generally authorized to access a given computer system.[5] Thus, Plaintiffs' facts do not establish that Dr. Marshall violated the Computer Fraud and Abuse Act when he allegedly altered the LogMeIn program in violation of the member agreement or Company policy.[6]

Plaintiffs' interpretation of "exceeds authorized access" also runs afoul of *Van Buren*'s "gates-up-or-down inquiry," under which "one either can or cannot access certain areas within the system." *Id.* at 1658-59. Plaintiffs' facts appear to allege that Dr. Marshall could access LogMeIn generally and program controls specifically. What lawful or unlawful actions Dr. Marshall took pursuant to his authorized access is the remaining question. Taken to its logical end, Plaintiffs allege that Dr. Marshall accessed or altered

---

[5] The Court also is concerned that the outcome Plaintiffs urge (of computer policy violations leading to liability under the "exceeding authorized access" prong) edges uncomfortably close to criminalizing "every violation of a computer-use policy" which *Van Buren* intended to avoid. *See Van Buren*, 141 S. Ct. at 1661-62.

[6] It appears undisputed that Dr. Marshall could have LogMeIn installed on the Practice's computers. It is also seems undisputed that Dr. Marshall could click on the LogMeIn icon and launch the program. Thus, Dr. Marshall apparently allegedly exceeded his authorized access only in the narrow context of allegedly "blocking, removing, uninstalling, or otherwise altering" the program. *See* [Doc. 33] at 16; [Doc. 8] at 10.

LogMeIn information available to him for an improper purpose, e.g., uninstalling or deleting LogMeIn. *Van Buren* specifically denounced this scenario. *Id.* at 1655 (rejecting the notion that "an employee might lawfully pull information from Folder Y in the morning for a permissible purpose . . . but unlawfully pull the same information from Folder Y in the afternoon for a prohibited purpose.").

The Court agrees with Judge Ritter and finds that "a plausible claim asserting federal question subject matter jurisdiction is lacking." *See* [Doc. 31] at 9-11. The Court therefore overrules the Objections[7] and adopts the recommendation to find that Plaintiffs have failed to show facts or law supporting a Computer Fraud and Abuse Act claim. The Court will therefore dismiss Plaintiffs' federal claim. The Court will also decline to extend supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367 (c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004) ("[S]upplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion.").

## II. Plaintiffs have not established diversity jurisdiction.

Plaintiffs object to the recommendation to dismiss their state-law claims for lack of diversity jurisdiction. In the Objections, Plaintiffs first argue that Dr. Pope's ability to sue derivatively on behalf of the Company precludes the need to name the Company as a plaintiff in the lawsuit. [Doc. 33] at 12, 13. Second, Plaintiffs assert that the Company

---

[7] Plaintiffs raised allegations that Dr. Marshall committed the crime of perjury for the first time in their Objections. Thus, the Court deems this argument waived and will not consider it. *Marshall*, 75 F.3d at 1426 ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

functions as a nominal defendant and thus its citizenship is irrelevant to the jurisdictional analysis. *Id.* Upon de novo review, the Court finds that none of these arguments is meritorious and adopts Judge Ritter's recommendations.

<u>Characterizing Plaintiffs' claims as derivative does not render the LLC a nominal party.</u>

Plaintiffs argue that a New Mexico LLC member-manager is entitled to bring a derivative suit against another member-manager. [Doc. 33] at 12. By extension, Plaintiffs contend that the member-manager bringing the lawsuit does not need to name the LLC itself as a plaintiff. The New Mexico Limited Liability Act provides in relevant part:

> [A] member of a[n] [LLC] is not a proper plaintiff to a proceeding by or against the limited company solely by reason of being a member of the [LLC], except where the object of the proceeding is to enforce a member's right against or liability to the [LLC].

N.M. Stat. Ann. § 53-19-14 (2021).

New Mexico's general rule is that shareholders have standing to assert derivative claims to sue for injuries to the corporation. *In re Patel*, 536 B.R. 1 (2015) (applying this rule to an LLC in a bankruptcy proceeding) (citing *Marchman v. NCNB Texas Nat. Bank*, 1995-NMSC-041). New Mexico uses a two-part test to determine whether a claim is direct or derivative. *Id.* The test asks: (1) whether the corporation or the suing individual stockholder suffered the alleged harm; and (2) whether the corporation or suing individual stockholder would receive the benefit of the recovery or remedy. *Id.* at 16 (citing *Rael v. Page*, 222, P.3d 678, 683 (Ct. App. 2009)).

Applying this test, the Court agrees that Plaintiffs' claims are derivative in nature based on the Company primarily suffering the alleged harm. The harm arose from Dr. Marshall allegedly fraudulently diverting Company funds for his own benefit. Thus, it was the Company who suffered the harm when Dr. Marshall purportedly misappropriated

funds for himself. *See id.* It was also the Company who would be entitled to collect any recovered diverted funds. *See id.* Further, both Dr. Marshall's and Dr. Pope's membership interests diminished because of the alleged fraudulent diversion. Therefore, Dr. Pope's injury was not "separate and distinct" such that Dr. Pope could individually pursue a direct claim to recover the diverted funds. *See id.* However, this determination does not mean that the Company's presence as a formal party is irrelevant.

<u>The Company is a real party in interest and must be named as a separate plaintiff.</u>

Plaintiffs argue that the Company's citizenship is irrelevant to the Court's jurisdictional analysis because it is a nominal party. The Court disagrees with that characterization. Rule 17(a) mandates that an action be brought in the name of the real party in interest. Fed. R. Civ. P. 17(a); *Worrell v. Scott H. Sanger, P.C.*, No. CIV 00-581 JC/LFG, 2001 WL 37125315, at *2 (D.N.M. Jan. 9, 2001) (explaining that this rule "enable[s] a defendant to avail himself of evidence and defenses that he has against the real party in interest, and to assure him finality of judgment."). There is "no mechanical or bright line rule for determining when a party should be viewed as merely nominal or formal for the purpose of diversity jurisdiction." *City of Carlsbad v. I&W, Inc.*, Civ. No. 12-080 BB-CG, 2012 WL 12931286, at *6 (D.N.M. May 15, 2012). The Court must generally "rest jurisdiction only upon the citizenship of the real parties to the controversy." *Id.* (internal citations omitted). The Tenth Circuit "recognizes as nominal parties those parties with no real interest in a suit or against whom no relief is sought." *Hunt*, 403 F. Supp. 3d at 1067. (collecting Tenth Circuit cases on nominal parties). This begs the question of whether or not the LLC is a real party in interest to this suit.

The forum state's substantive law dictates the identity of a real party in interest. *Worrell*, 2001 WL 37125315, at *1. New Mexico law provides that "a real party in interest is one who owns the right being enforced or who is in a position to discharge the defendant from liability." *Id.* (citing *Moody v. Stribling*, 985 P.2d 1210, 1214 (Ct. App. 1999)). The Court finds that the Company is a real party in interest in this lawsuit. Plaintiffs sued Defendants for allegedly deleting computer software on Company computers, breaching the member agreement by diverting the Company's income, fraudulently transferring the Company's funds and unjustly enriching themselves thereby, and breaching the duty of loyalty by using the Company's property for personal benefit. *See* [Doc. 8] at 9-15. Plaintiffs' causes of action thus arise from alleged harm to the Company's funds and property. It is therefore the Company who owns the rights being enforced and may discharge Defendants from liability. Any alleged harm to Dr. Pope individually is collateral. While Plaintiffs are correct that Dr. Pope is the human being who will be deposed and testify in any trial, that is not the proper inquiry for a real party in interest.

<u>Plaintiffs' authority does not support Plaintiffs' diversity jurisdiction arguments.</u>

Plaintiffs' authority does not persuade the Court. To illustrate, Court will first address those cases pertaining to this District.  Plaintiffs make much of the *Alpha Alpha, LLC v. Land Strategies, LLC* case. No. CV-18-648 KG/JFR, 2019 WL 2468080, at *1 (D.N.M. June 13, 2019). Plaintiffs emphasize that Judge Gonzales "did not question the existence of [diversity] subject matter jurisdiction." [Doc. 33] at 13. However, therein lies the problem for Plaintiffs as well. Neither court nor the parties touched on jurisdiction or substantive merits at all. *See Alpha Alpha, LLC*, 2019 WL 2468080, at *1-*4. The court dealt solely with procedural issues concerning a proposed third amended complaint which

it ultimately struck. *See id.* Considering the lack of any jurisdictional rules or analysis, this case does not help Plaintiffs to establish jurisdiction.

Plaintiffs cite *City of Carlsbad v. I&W* for the "axiom[] that the citizenship of a nominal party is irrelevant for diversity purposes." [Doc. 33] at 12; *see City of Carlsbad*, 2012 WL 12931286, at *7. The case presented an insurance coverage dispute where I&W's bankruptcy action barred the City from seeking monetary relief against the Trustee but allowed the Trustee to be a nominal defendant to the underlying lawsuit. Judge Black held that I&W was not a nominal party because the City had to secure a judgment against I&W to collect from other defendants. *Id.* The Trustee, on the other hand, was a proper nominal party because the City did not seek real relief from the Trustee nor need to establish the Trustee's liability to recover from other defendants. *Id.* at *7. Pertinent to this case, *City of Carlsbad* shows that assessment of diversity jurisdiction first requires consideration of which are the real parties in interest and which are truly nominal with "no real interest in the controversy." 2012 WL 12931286, at *6 (quoting *Hann v. City of Clinton, Okl. ex rel. Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942)). Here, where the Company and its interest are at the heart of the dispute, skipping this analysis dooms Plaintiffs' argument.

Finally, Plaintiffs heavily emphasize the persuasive Sixth Circuit case *Mortenson Family Dental, Inc. v. Heartland Dental Care, Inc.*, 526 F. App'x 506 (6th Cir. 2013). In that case, Mortenson (a dental practice holding company and citizen of Kentucky) sued Heartland (a dental practice operator and citizen of Delaware and Illinois). *Id.* They used an LLC (citizen of all three states) to deposit and distribute funds to members. When a dispute arose about ownership percentages in the LLC, Mortenson sued Heartland. *Id.*

15

The Sixth Circuit held that the LLC was a nominal plaintiff and not a real party in interest because it did not assert any rights, would not get any relief, nor sought to enforce any duty owed by Heartland. *Id.* at 508. Thus, its citizenship was irrelevant. The court emphasized that the LLC was "simply a money holder and therefore a nominal party." *Id.* at 509.

In contrast, the Company here is not "simply a money holder" but is asserting its own rights, including not to be unlawfully deprived of funds, against Dr. Marshall. Plaintiffs' parenthetical that this case shows a "partnership was a nominal party in dispute between partners" is misleading. Rather, *Mortenson* directs the Court back to the inquiry of who is asserting rights, in this case the Company. The Court finds that the Company is a real party in interest to this litigation and must be joined as a separate plaintiff because Plaintiffs' claims assert the Company's right to recover and the Company may discharge Defendants from liability.

<u>Joining the Company as a separate plaintiff destroys diversity jurisdiction.</u>

The Company's presence as a separate plaintiff would destroy complete diversity and thus the Court's jurisdiction. Complete diversity demands that no plaintiff and no defendant may be citizens of the same state. *Depex Reina 9 P'ship v. Texas Int'l Petroleum Corp.*, 897 F.2d 461463 (10th Cir. 1990). A limited liability company takes on the citizenship of all its members. *Siloam Springs Hotel, LLC v. Century Sur. Co.*, No. 08-0175 JB/ACT, 2009 WL 1312856, at *18 (D.N.M. Mar. 11, 2019). It is undisputed that Dr. Pope is a citizen of Arizona and Dr. Marshall is a citizen of New Mexico. The Company is thus deemed a citizen of both New Mexico and Arizona. The combination of the Company as a New Mexico plaintiff and Dr. Marshall as a New Mexico defendant destroys complete

diversity and dispels diversity jurisdiction. Accordingly, the Court overrules Plaintiffs' Objections and adopts Judge Ritter's recommendation to find that Plaintiffs have not established diversity jurisdiction.

### III.     Plaintiffs' request to amend is not well-taken.

Plaintiffs, in their response to Defendants' Motion to Dismiss, request leave to amend, claiming that the Court "must allow the plaintiff leave to amend unless it determines that an amendment would be futile." [Doc. 21 at 8]. Plaintiffs argue that where a complaint is dismissed for lack of diversity, the Court must allow plaintiff to "cure the jurisdictional defect by dropping a 'dispensable nondiverse party.'" *Id.* Plaintiffs make this request again in their Objections, but fail to append a proposed second amended complaint in either filing. [Doc. 33 at 17–18]. Defendants, meanwhile, allege that the Court should deny this request as amendment would be futile. [Doc. 34 at 14]. The Magistrate Judge nonetheless recommends that Plaintiffs be allowed to amend. [Doc. 31 at 11].

"A court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) (also recognizing the importance of compliance with local rules). The Tenth Circuit has "long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir.), *cert. denied*, 211 L. Ed. 2d 289, 142 S. Ct. 477 (2021). Moreover, in this District, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1.

Here, Plaintiffs have already had the opportunity to amend their Complaint. *See* [Doc. 8]. Moreover, in both their Response to Defendants' Motion and their objections to

the PF&RD, Plaintiffs fail to include a proposed second amended complaint. *See generally* [Docs. 21, 33]. The Court will therefore deny Plaintiffs' request for leave to amend a second time.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction to decide the remaining motions concerning the renewed application for a TRO and early discovery. [Docs. 9, 27].

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Objections [Doc. 33] are **OVERRULED** and the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 31] is **ADOPTED IN PART** upon de novo review.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [Doc. 17] is **GRANTED**. Plaintiffs' First Amended Complaint [Doc. 8] is thus **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' request to amend their Complaint is **DENIED**.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE